The next case on the calendar is Testa v. Becker. Good morning. May it please the Court, Noah Lipschultz on behalf of the appellants and cross-appellees, Lawrence Becker and the Xerox Corporation Retirement Income Guarantee Plan. The fundamental question in this case boils down to whether an individual can sit on the litigation and litigate the same alleged wrong. No, that's not the fundamental question in this case. The fundamental question in this case is whether clear directives from federal court of appeals, federal courts of appeals binds your client. That's the issue. We don't think that Framert I, which I believe Your Honor is referring to, in 2006 was a clear directive as to non-participants in that litigation, as to individuals, for example, who signed releases, and as to individuals who did not bring claims within the limitations period. So when this Court said in Framert Well, how is the fiduciary entitled to ignore directives that this applies to all litigants in Mr. Testa's position? The fiduciary is not ignoring a directive of the court. The fiduciary is hewing to the relief ordered by the court, ultimately, as to the litigants in not just Framert, but as to other related litigation that has been going on where those individuals timely filed claims and there were no other defenses to those claims. So the plan would work differently as to others? The plan works differently as to those that do not have timely claims. It's not a fiduciary breach to deny a benefits claim that was not timely filed. It's not a fiduciary breach to deny a benefits claim where there's been a waiver, where there are individualized defenses to a particular claim. It's not a fiduciary breach to deny a claim based on How do you expect a participant to complain in 1998 when they're not even eligible for benefits yet? Because under this circuit's precedent someone who's not even qualified yet, who's 10 years away from qualifying, gets this mailing, and they're supposed to study it and then bring suit, and if that person were to bring suit, would you not assert some kind of a rightness defense? We would not assert a rightness defense, and we didn't in the litigation that ensued right after the SPD was published. So under this circuit's precedent, when an SPD clearly explains, like this one did in 1998, how an individual's benefits are going to be calculated, that is a clear repudiation if the individual has a different understanding. Right after this SPD was published, the Frommert plaintiffs all filed suit. There were about a hundred of those plaintiffs. There were a hundred of those plaintiffs. More plaintiffs filed other pieces of litigation as the appellees concede in their brief. We said in Frommert 1 that it was unnecessary to issue a judgment declaring that the FANTOM account is prohibited by ERISA and enjoining its application. What did we mean by that? I think what you meant is what I was alluding to before in response to Judge Parker's questions, which is Frommert itself was not a class case. There was no injunction. It was not dealing in that particular opinion with individual issues of relief like it did in subsequent opinions. There were two different subsequent opinions dealing with the remedy and who in particular was entitled to a remedy and who was not entitled to a remedy. So our position is as of 2006 when this court made the statements that it did in Frommert, by then Mr. Testa's claims were already time barred. And by being already time barred, there was no new cause of action created in 2006 by this court's statements. What the appellee's position is and what the litigant's position was in Frommert and the related litigation was that the violation occurred in 1998 when this SPD was published. In fact, in Frommert, the violations predated the 1998 SPD because there were prior benefits communications that they believed did not properly explain the offset provision, how it worked. It didn't provide, to your point Judge Chin, it didn't provide the average reader with notice that his or her benefits would be offset the way that the 1998 SPD did. And the district court in this case and all of the related litigation found that the 1998 SPD was a clear repudiation of anybody's claim that this offset could not apply. That was known to Mr. Testa. That's why his 502A1B claim for benefits was untimely, according to district court. And there's no reason to assess his breach of fiduciary duty claim any differently. In essence, under the district court's rationale, a cause of action would be born any time there are statements in a judicial opinion, even if those statements occur outside the limitations period. When was he rehired? He was rehired prior to 1998. Okay, so this is the language from our court. We hold that defendants fail to meet their obligations to provide advance notice of the amendment as required by 204. Meaning that the FANM account may not be applied to employees rehired prior to the 1998 SPD. And when the court made that statement, Your Honor, it was not considering things like individual defenses, i.e. releases, or if somebody had not brought a claim within the limitations. And we're talking about what the obligations are of a fiduciary who reads this language. The fiduciary who read that language understood it. I can parse it. I mean, I don't have to follow it. It may be clear to other people, but I can get around it. That's not how fiduciaries are supposed to operate. Your Honor, with respect, the fiduciary was not looking for a way to get around it. The fiduciary was looking to see, did the individuals at issue have timely claims? There were no other defenses that applied, and then the fiduciary conceded, as to that group, this ruling and this result and this remedy will apply. However, as to individuals like Testa, who didn't timely file claims, or individuals who signed releases, as this court later found in Frommert II, the fiduciary did not believe that this ruling would apply. The court in Frommert I, if they decided to entertain equitable relief, issued an injunction to reform the plan for all plan participants. That remedy was not sought. It could have been under ERISA section 502A3. So there was no injunctive relief, and there was no relief as to non-parties to the litigation. And it's not a fiduciary breach, again, to deny claims where there are valid defenses. Did the plan administrator in that original litigation, and you may not know the answer to this, this was a while ago, but argue before Frommert I that it was unnecessary to seek such equitable relief because it intended to apply the same rule to all plan participants? I don't believe, Your Honor. I'm not certain, but I don't believe that argument was made. There was an allusion to a similar argument in the related Kunzman litigation, where the plan administrator said, as to individuals where there are not individualized defenses, that have timely filed claims and there aren't release issues, the remedy ordered by Frommert will apply to individuals that there are no defenses to, otherwise, who have timely claims and the like. So that's the argument that they made, I believe, in Kunzman. Now, the appellees have misconstrued that to say, categorically, the plan fiduciary said they would apply the ruling across the board to anybody who's a pre-98 rehiree. And that's not the position that the plan took, and it's not the- At the bottom of your position is that if a court says that this relief applies to all individuals who were rehired before 1998, I am free, consistent with my fiduciary duties to exclude individuals who may not have filed timely or in respect to whom the fund has defenses? Correct, Your Honor. That is our position. Okay. Thank you. Good morning, Your Honor. Sean Martin for Robert Testa. Fiduciaries do not continue to do things that courts have declared to be arbitrary and capricious. Fiduciaries do not ignore orders of the court. This court held in Frommert in 2006 that it was not part of the plan, that it would be arbitrary and capricious for a fiduciary to apply this offset to anyone hired before 1998. A fiduciary who cared about its employees like it's supposed to would not have done it as of that date. Isn't there an argument that there's a fiduciary obligation to not pay out on a claim that has grown stale and for which the statute has lapsed? No. A fiduciary is permitted in the interest of its employees to accept late claims if it wishes, and regardless, a fiduciary is required to interpret the plan. And what this court held in Frommert was that the plan for individuals rehired before that date, the plan did not contain that offset provision. A fiduciary would not continue to apply that offset provision. So that's the fiduciary breach, which is different than the disclosure violation that they initially had. My difficulty is, and help me understand, that this ERISA claim appears to me accrued in 1998 because we also said that the 1998 plan gave full notice of this phantom accounting benefit, and your client had a period of time that set forth in the statute to bring a claim. He didn't join the Frommert I litigation. He could have been one of the 100, but he wasn't. Absolutely, though. Frommert dealt with this exact argument at the last two pages of its opinion. They made the exact same argument the plan did in Frommert in 2006 because they said an earlier benefits update, the 1995 one, had done the same thing as the 1998 SBD. They claimed in that case that that case was time-barred because the 1995 disclosure had disclosed everything. And to make clear, this is what the last two pages of Frommert I said about that. It said it's not time-barred because you're making ongoing misrepresentations about the plan. You're telling employees rehired before 1998 that this is part of the plan when it's not. That's an ongoing violation. The 1998 SBD, it disclosed, absolutely, that there was a phantom account offset. It did not disclose that that offset was not part of the plan for people hired before 1998. What the court said is that's an ongoing misrepresentation, and it doesn't give them all the material facts they need to know. But I feel like I cut you off, and I apologize. But that's for people who brought suit in the wake of the 19—that's for the 100. But you weren't—what are the ongoing misrepresentations that essentially you're arguing for a toll until your client brings suit in 2010? It's not a toll under—the statute only begins running when the person has actual knowledge— this is Osberg v. Footlocker—of all the material facts. In this case, all the material facts would be, and they're applying an offset that is not part of your plan. Telling them, I'm just applying the offset, is no different than Osberg. In Osberg, they told them, we're converting your plan. That may reduce your benefits. In this case, they did not tell them two different things, either of which would be—which would not establish actual knowledge. They didn't tell them that they were applying an offset that wasn't part of their plan. That was never told. They haven't done that to this day. So they never notified the beneficiaries of that fact. And they certainly didn't tell them, back in 1998, I'm not going to apply any future rule. And in fact, they said the exact opposite. Their consistent position has always been—until it wasn't—whatever happens in Frommert will happen to you. And that's what they told the district court as well. They said, as fiduciaries—this is what they were telling the court, and obviously the participants had the same understanding— we will do whatever happens in Frommert, subject admittedly to if people settle their case. They don't need to do that. But they said that as fiduciaries, what happens in Frommert will be controlling in this case. There was no need for class certification? There was no need for class certification because ERISA requires the plaintiff administrator to interpret things uniformly. If they do it for one person, they can't do it differently for another person. That would be a breach of their fiduciary duty. So it actually made sense not to certify a class. And indeed, when in Koonsman, they tried to certify a class just to make sure that in fact the Xerox would do what the court had ordered, the district court said, I don't need to certify a class. They have promised me this will apply to everyone. And the court relied upon that. So it's not just the beneficiaries who were misled. It was the district court that was misled. And I understand my brother's claim that we... The specific points in the record you'd like us to focus on for that? The best ones, quite frankly, are in the amicus brief. The record citation, find it in the amicus brief. It's on page 9 of the amicus brief. There are three bold block quotes. The best, in my view, is the middle one. This is quoting from their representation of the district court. The outcome of the claims asserted by Plaintiffs McNeil and the other Koonsman plaintiffs, in this case, whether or not part of the putative class, is controlled by the outcome of the fromer litigation. And those are also people that didn't sue until they retired way long after the 98th Amendment. They said it would be controlled by that case. Your adversary says that that reference is to a statement that's made after the district court has already determined that the remedy will apply to the Koonsman plaintiffs. No, this was a representation before the remedy decision as to whether or not to certify a class. Because, obviously, the certification of the class doesn't come after the remedy. So this was a motion to certify a class to make sure that everyone that was rehired would get the remedy. Was it after a rejection of the statute of limitations defense? It was... After a rejection of the argument that the statute of limitations barred the Koonsman claims? The district court found that the statute of limitations barred three of the claims, but not one of the claims. So it was... It was after the district court had accepted your theory that there is a revival of the claim by virtue of the Second Circuit decision. I know that's how you want to characterize it, but essentially, yes. Yeah, it was that you're correct on the timing. You're right that I would disagree as to the characterization, but I understand your view. In that context, saying the Koonsman plaintiffs will have the same remedy as the Frommer 1 plaintiffs is just law of the case, essentially, in the argument, isn't it? Well, it's not law of the case because their position has always been that the individual person has to sue. They never made the claim anywhere in their briefs that the statute of limitations would... That they'd be allowed to raise a statute of limitations claim as to those other people. So that was a separate argument. So I think there are two separate reasons. We think the district court was correct that there was no reason for beneficiaries to file a lawsuit when fiduciaries are required to apply things evenly. But we also think that the Frommer 2006 decision itself demonstrates that because the misrepresentations were ongoing... And I just want to quote the very last part of Frommer 2006 with a reminder that the standard is you have to have actual knowledge of all material facts. The last words of that opinion, such knowledge of an actual breach could only come with disclosure of the fact that the defendants misrepresented the terms of the plan in justifying the usage of the phantom account. So in that case as here, this court has already found that the statute only starts running when you make a disclosure that you're lying about the plan. That you're applying a part of the plan that doesn't in fact apply to you. So I think if this was the same case, that would be law of the case. This is not the same case. It's a related case. But it's at least precedent. And the reason behind that rule is the same as was in Osberg v. Furtlocker, which is until you know all of the material facts. And in this case the central material fact is they're applying an offset that's not part of the plan. Then you're not on actual notice. And then the statute does not start running. If we agree with you with respect to the third cause of action, do we need to reach the question of whether the other three causes of action were properly dismissed? You only need to reach it if the Frommert case that was argued last month ends up granting them more relief. And I can explain that if I need to. They've made plan interpretation and other arguments, which Mr. Testa and then Koonsman, which is another case that you will see, if counts one, two, and four come back as a result of this Court's decision, then Mr. Testa will be able to get plan benefits if Frommert gives him an additional relief. In short, if Frommert gets more relief, Mr. Testa gets more relief, if he revives claims one, two, and four. But why doesn't relief on this claim make him whole? It doesn't make him whole because, as we argued at length in the Frommert case that was argued last month, because the plan itself actually promises him more than new higher relief, among other things. More than what, I'm sorry? The relief that he got is just to be treated like a new higher. That was the equitable remedy that the district court imposed. In Frommert last month, we argued at length that that remedy does not make him whole. It treats him worse as a new higher. It contravenes the plan. It doesn't give him the benefit, just to very briefly summarize that argument. The plan requires that his benefit be calculated on the basis of all of his years of salary at his highest average pay. And if you treat him like a new higher, you're not giving him all of the years of that service. If he worked 15 years and 15 years, he's only getting 15 years times his highest average pay, not 30. So I think I understand you, but I want to be clear. To follow up on Judge Chinn's question, we don't reach the other three claims. You would reach the other three claims if, the only reason you would need to reach them, is if Frommert was decided in favor of the employee. If Frommert was affirmed, if they said new higher is the remedy you get, what the district court awarded is perfectly good, you do not have to reach the cause of action that were dismissed. Should we be holding this case for Frommert? I believe you should. It will not deal with statute of limitations because it doesn't have a statute of limitations argument. It could affect our case. It will affect your case unless you choose the only, you would not hold it if you were going to reject, if you're going to affirm the dismissal of causes of action one, two, and four. Does that make sense? In other words, you could do it either way you want. You could decide, do I agree that they had actual knowledge? The district court dismissed three claims but kept one. If you thought that seems right to me under the law, you would not have to hold the case. If you win on one, win on the remaining fiduciary duty claim, I just want to be clear, you're telling me that that would not afford, Mr. Tester, a make whole remedy? If we win only on the claim. Breach of fiduciary duty that we've been spending most of our time. Exactly right. That will grant him whatever relief, that will not make him whole if the court in Frommert agrees with our argument that new hire does not make an employee whole. Does that make sense? We've argued at length that new hire is an inadequate equitable remedy in that case. If they agree with us, then in this case, and that's why we cross appealed, that equitable remedy would not make him whole and he'd be entitled to more. He'd be entitled to, as we've always said in all of these cases, everyone's entitled to the same thing. And so that's how they interact. Any reasons that we might wait until Frommert has decided. Understood. Two points very briefly. I want the record to be crystal clear about these alleged representations in opposition to class cert. Docket number 68 in the Kunzman case, page 16. This is what we said in opposition. The plan administrator is bound by law in his fiduciary duty to apply the court-ordered benefits calculation in Frommert to all similarly situated plaintiffs, including those in this action as to which other defenses do not apply. On page 13, statute of limitations defense was raised as well because of the individualized nature of such defenses in response to class relief. So there was no misrepresentation about the scope of what would and wouldn't apply in Frommert. This is an incorrect representation of the record, unfortunately. Secondly, the Supreme Court in Frommert said that this plan fiduciary made an honest mistake in how it tried to amend the plan prior to 1998. So when my brother here talks about ongoing misrepresentations that this court discussed in 2006 in Frommert, this court was discussing benefits communications that were, in the court's view, not clear enough prior to 1998. The Footlocker case involved active concealment, lying to your participants by saying, your benefits are going to be better when they're not. The CFO in Footlocker was confused about his own pension benefits because he was misled. There's no record evidence of that nature in this case at all. The actual notice of this claim was in 1998 when the plan communicated clearly to all, this is the offset, this is what we plan to apply. This court, all the lower courts held in this court's precedent holds that that is a clear repudiation and that's when a claim accrues of this nature. Even if we were to accept your argument just as you've just stated it, isn't there still reason to wait for the decision from the preceding panel for whatever light it might shed on both of your arguments about the statute of limitations? I don't think so, Your Honor, only from the standpoint that the new higher remedy that the district court ordered in this case and has already ordered in Frommert we think is the proper remedy. So we don't think there's a need to wait based on the remedy, but we think that you can reach the limitations issue as it's posed before the court based on the party's briefing in this case. There's no particular reason not to wait, however. If the court is so inclined, then the court may wait, obviously. If there's no other questions. Thank you both. Thank you. Well argued.